Mr. Justice MacArthur
delivered the opinion of the court:
This is a petition in bankruptcy to have the Capital Publishing Company declared an involuntary bankrupt. The petition was filed June 14,1877, and after an answer had been put in by the company, the petitioning creditor, George Hill, Jr., obtained leave to amend his original petition by striking out the word “ trader ” and inserting “ manufacturer ” in lieu thereof. So that the petition as amended charged that the *411 company, on the 28th day of April, 1877, being a manufacturer, omitted to pay its promissory note dated March 26, 1877, and payable thirty days after date, with interest at the rate of eight per centum per annum, but suffered the same to be and remain unpaid and be protested for non-payment, and still omits, refuses, and neglects to pay the same; said note being for the sum of $395.45, and being commercial paper, and so has suspended payment of its commercial paper and has not resumed payment within a period of fourteen days.
The company demurred to the petition as amended, on the ground that the company was not a manufacturer within the meaning of the bankrupt act, and therefore not capable of being declared a bankrupt; and that the petition of the appellant was defective for the reason that it has nowhere alleged that the promissory notes referred to in it were or are the commercial paper of the company, made or passed in the course of its business as a manufacturer.
The petition describes the alleged bankrupt to be a corporation organized under and by virtue of the acts- of Congress in such case made and provided in the District of Columbia, which for a period of six months has had its habitat and carried on business at the city of Washington, in the District aforesaid. The point was raised on the argument that the demurrer admitted the company was a manufacturer. But in determining this question we may properly look at the act of incorporation thus referred to in the petition. The certificate of incorporation describes the object of the company in the following words: “ To carry on the business of printing and publishing a newspaper called ‘ The Capital,’ and all business connected therewith, and such other business as ordinarily appertains to the printing and publishing a newspaper.”
The first question raised upon the demurrer is whether the company is a manufacturer within the meaning of the bankrupt act.
Words in a statute are to be taken in their ordinary and familiar signification, and regard is to be had to their general and popular use. The court will presume that they were *412 . used to express their meaning in common usage. Keeping in mind this rule of interpretation, we can determine the judicial construction to be placed upon the word “ manufacturer” when it is used in the bankrupt law.
There can be no doubt but the word “manufacturer” was used in the statute in the limited sense in which it is commonly understood. The agriculturist is engaged in the most extensive industry of this or any other country, and he brings to the market many commodities which are produced without the direct aid of the soil, or of the vegetative powers of nature, but he is never spoken of in common parlance as a manufacturer. The industries to which the dictionaries and the writers on political economy limit this term are where the raw materials or natural substances are wrought by hand, art, or machinery into commodities for use; and the examples given are cloths, iron, shoes, cabinet-work, glass, cotton and silk goods, &c. This limitation of the term manufacturer is to be adopted as the true meaning of the bankrupt law. Perhaps there is no substantial difference between the various •branches of industry in any respect, except only in regard to the different processes which they employ." To manufacture is to change and modify natural substances so that they become articles of value and use. Chantrey was in the habit of receiving $3,000 for a single bust, Bierstadt $25,000 for a single picture, and the representation of Lincoln’s Cabinet was purchased at a cost of $20,000, and presented by a noblehearted American lady to the Congress of the United States. These are called works of art, but in a legitimate sense they may be comprised amoUg the productions of manufacturing industry. -The artists use material and natural substances. They oftentimes employ a variety of subordinates. They work with their hands, and perfect an article of great pecuniary value. It symbolizes their art and genius. In a word, the artist accomplishes all that is implied by, but he is never included in, the term manufacturer. The definitions and rules which obtain in the Patent Office are not applicable here. ' A newspaper is not regarded as a manufacture any more than *413 a painting, and an editor a manufacturer as little as an artist. We have been referred to the case in re Kenyon and Fenton, decided by the Supreme Court of Utah. It was a case where the bankrupts carried on the business of printing blank books, cards, bill-heads, in addition to which they published a daily paper, and the petition alleged that they published the newspaper and “are manufacturers of books, cards, bill-heads,” &c. And the court say: '
“ Though it is not necessary to decide that the printing and publishing of a daily newspaper is manufacturing in the strict sense of the law, yet my brother j udges have expressed the opinion that it would be, and I am inclined to the same conviction.”
It will be observed that the decision is placed upon the ground of the bankrupts being manufacturers of books, bill-heads, &c.; and in this respect they were undoubtedly within the meaning of the act. Having come to this conclusion, the court further say that it is not necessary to decide that the publishing of a newspaper is manufacturing within the strict sense of the law, but express tbe opinion “ that it would be.” No more weight can be given to this voluntary case than to any other conditional obiter dictum. It might be respectfully suggested that the substantial difference between the strict sense of the term “manufacturer” in the abstract, and the strict sense it is to receive in the law, has been overlooked in this decision. We have already stated the proposition that every branch of industry which converts any material or substance into useful commodities, strictly speaking, comes under the term “ manufactures,” and in that sense a newspaper or a painting would be included. But we are of opinion that this is not the strict sense of the statute, which only includes those industries which commonly pass under that designation. This is an important distinction ; for while all employments rest upon the same faculty in man to labor, to contrive, and to • mould the refractory elements of matter, common usage and the convenience of society have given a limited signification to the word. The rule already adverted *414 to for the interpretation of statute law limits its'import to the sense in which it is usually received. Now, no definition of the word “manufacturer” has ever included the publisher of a weekly newspaper, and the common understanding of mankind excludes it. You may reason by analogy, or reason from the nature of things, that it is; and so you may do the same thing with anybody who labors himself or employs others. But surely a bankrupt law is not to be expanded to cover every employment. It was by express terms limited to certain classes, who are designted by names well known in the business world. The husbandman prepares the soil; the inventor his models; the orator his address, for which he receives $200 a night; the lawyer makes his brief, for which he scarcely ever gets enough; the physician formulates his prescription; and so on through all the divisions of labor and industry. By these means man acquires a certain mastery and is furnished with inestimable results. So of the newspaper. It has grown within a century into the most popular vehicle for the spread of information. Its vigor and influence are felt in every household. Indeed, it may be called the people’s storehouse of intelligence. It claims to be an institution, and even our statesmen, with great complacency, have denominated it “ the fourth estate.” It does not come within the popular meaning of the term “ manufacture,” unless, indeed, when its contents are slenderly endowed with the truth, or when its articles appear to be made out of whole cloth. It gives employment to printing-presses and types and editors; and yet, in the whole history of newspapers, from the close of the seventeenth century, this word “ manufacturer” has never been applied to them, or appropriated by them, in the whole range of English literature. „ No author has ever so used it, and it is never so applied by any statute or by any authority, except by way of opinion in the solitary case from Utah.
All the judges who heard the case are of opinion that the alleged bankrupt corporation is not a manufacturer within the meaning of the bankrupt act, and not amenable to bank *415 rupt proceedings, except the chief justice. We are unanimous in holding that the petition is defective in form, for the reason that it does not allege that the promissory notes therein mentioned were the commercial paper of the alleged bankrupt, made or passed in its alleged business of a manufacturer. This, however, may be the- subject of amendment, and for that purpose we sustain the demurrer, with leave to the petitioner to amend as he may be advised, and should he desire to take the case further. We have, however, decided the question that the corporation is not liable to be adjudged a bankrupt. So that after the formal corrections are made there will be no necessity for a rehearing of the case, and the final judgment of the court will be to sustain the demurrer and dismiss the petition.